410　　　　　　　July 8, 2026　　　　　　　No. 652

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of H. D. G.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. M. S.,
*Appellant.*

Wasco County Circuit Court
22JU04703; A188951

John A. Wolf, Judge.

Submitted May 21, 2026.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Gabe Newland, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Paul L. Smith, Solicitor General, and Stacy M. Chaffin, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this juvenile dependency case, mother appeals from a permanency judgment in which the juvenile court changed H's permanency plan from reunification to adoption.[1] Mother raises six assignments of error challenging the juvenile court's rulings that there were no compelling reasons to forgo a plan of adoption and changing H's permanency plan, and also arguing that trial counsel's inadequate performance deprived mother of her statutory and constitutional rights to adequate legal representation and her statutory right to call witnesses. The Oregon Department of Human Services (ODHS) responds that the juvenile court did not err in changing H's permanency plan and that mother has not made a colorable showing that she received inadequate assistance of counsel. We determine that mother did not establish a colorable claim of inadequate assistance of counsel and that the record is sufficient to support the juvenile court's determination that H's permanency plan should be changed to adoption.

Changing the permanency plan to adoption is not appropriate if there is a "compelling reason" to refrain from terminating parental rights. *Dept. of Human Services v. C. H.*, 373 Or 26, 59-60, 559 P3d 395 (2024) (discussing ORS 419B.476(5) and ORS 419B.498(2)). If a parent is attempting to establish that a "compelling reason" prevents the juvenile court from changing the permanency plan to adoption, it is the parent's burden to show the existence of a compelling reason. *Id.* at 60. One such compelling reason may be that "[a]nother permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships[.]"[2] ORS 419B.498(2)(b)(B). "The juvenile court's determination that a compelling reason does or does not exist is a legal conclusion," reviewed for errors of law. *C. H.*, 373 Or at 60.

---

[1]  Mother is H's only legal parent.

[2]  For example, a permanent guardianship may be appropriate if it is determined by clear and convincing evidence that the parent should never have physical custody of the child, but "other parental rights and duties should not be terminated." *Dept. of Human Services v. D. W. M.*, 346 Or App 827, 836-37, 586 P3d 938 (2026) (explaining the requirements and effects of a permanent guardianship) (internal quotation marks omitted); ORS 419B.365.

The right to counsel in a dependency proceeding "is derived from the Due Process Clause of the Fourteenth Amendment \*\*\*." *Dept. of Human Services v. R. R. R.*, 340 Or App 658, 660, 571 P3d 1169 (2025). Whether trial counsel's performance was "inadequate" and whether counsel's inadequacy caused "prejudice" are both "legal issues," and are thus reviewed for errors of law. *Dept. of Human Services v. T. L.*, 358 Or 679, 701, 369 P3d 1159 (2016). To prevail on a claim of inadequate assistance of counsel, a parent must show that (1) "trial counsel was inadequate" and (2) "the inadequacy prejudiced the parent's rights to the extent that the merits of the [trial] court's decision are called into serious question." *Id.* at 702. In juvenile dependency proceedings, a claim of inadequate assistance of counsel "may be raised in the first instance on direct appeal." *Id.* at 703. "When reviewing an inadequate-assistance claim, we look at the totality of the circumstances to determine whether the claimant was denied a fair trial because of the alleged inadequacies or failures, including tactical decisions that counsel could have made or should have made better." *Dept. of Human Services v. L. T. G.*, 329 Or App 270, 271, 540 P3d 1142 (2023) (internal quotation marks and citation omitted).

Three years prior to the permanency hearing at issue, H was removed from mother's care due to mother's substance use and because H's hair tested positive for amphetamines and methamphetamines. Since then, H has lived with a resource family—her paternal aunt and uncle, who are also her prospective adoptive parents. Mother has continued to use substances and has declined to participate in services, despite offerings by ODHS.

H has continued to have weekly in-person visits with her mother and has frequent virtual visits with two adult siblings. The record indicates that although there were some positives during the visits between mother and H, there were also challenges. Mother consistently brought special, handmade gifts for H, including a pair of handmade fairy wings. Nonetheless, on at least one occasion, mother was upset with H for referring to her resource parents as "mom" and "dad." And on at least one occasion, mother told H that she would return to living with mother "soon." H was

consistently sad, angry or dysregulated following visits with mother.

On appeal, mother argues that inadequate performance of her trial counsel deprived her of her statutory and constitutional rights to adequate legal representation and deprived her of her statutory right to call witnesses. She argues that trial counsel incorrectly believed that ODHS had the burden to prove that there was *not* a "compelling reason," ORS 419B.498(2)(b), such that a change in permanency plan was warranted. She argues that because trial counsel held that incorrect belief, trial counsel did not "present any evidence to support [mother's] legal argument," and called no witnesses. Further, mother argues that trial counsel's incorrect belief that mother did not have the burden of proof regarding a compelling reason, created a "serious question" about the merits of the juvenile court's ruling. *T. L.*, 358 Or at 702. Notwithstanding her inadequate assistance argument, mother also argues that the juvenile court erred by not finding a compelling reason and by changing H's permanency plan to adoption.

In response, ODHS argues that "the record does not support mother's factual premise, and she has not stated a colorable claim of inadequate assistance of counsel." ODHS argues that mother's "[t]rial counsel cogently opposed the change of plan," offered supporting evidence via cross-examination, and that mother has not established prejudice. ODHS argues that, on appeal, mother has not met her burden to "produce some credible evidence" that any imperfection regarding her trial counsel resulted in a "fundamentally [un]fair" proceeding. *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 191, 796 P2d 1193 (1990). ODHS argues that sufficient evidence supports the juvenile court's determinations, including the plan change.

The record indicates that mother's trial counsel argued for the juvenile court to select guardianship rather than adoption as H's permanency plan. Mother's trial counsel argued that mother provided primary care to H for her first four years of life, that mother loves H, and that mother should be given the opportunity to maintain a relationship with H. Mother's trial counsel did argue that H's

relationships with her siblings, including legal status as siblings, supported a determination that adoption was not in H's best interest. Additionally, although mother's trial counsel did not develop much detail about H's other familial connections, he did argue that H had a relationship with mother's grandmother and aunt. Even though mother's trial counsel did not call separate witnesses, he did cross-examine ODHS's witnesses to elicit information about H's relationships with her adult siblings and mother.

But mother has not established "that the merits of the juvenile court's decision are called into serious question." *T. L.*, 358 Or at 702. The juvenile court understood that mother "argued first for no change in the plan [away from reunification], but if a change was made[, mother] contends a guardianship is the most appropriate plan." The parties all agreed that H had important relationships with her adult siblings. The parties also agreed that H primarily received care from her mother for the first four years of her life, that H and mother had weekly visits, and that, at the time of the permanency hearing, H desired to continue in-person contact with her mother.

The record reflects that the juvenile court took those relationship dynamics into account when considering which permanency plan was in the best interest of H. The juvenile court determined that, although H and mother have a bond and H has expressed a desire to remain in contact with mother, their "bond is significantly less than the typical parent child bond." The court further determined that mother "engaged in conversations during visits that [left H] confused about her placement and situation, which cause[d] H] distress."

The juvenile court determined that H has a strong bond with her resource parents and that adoption by them was in H's best interest because of the stability and assurance it would provide H. The court also noted that H's resource parents are willing to maintain H's visits with her siblings. Evidence from a clinical psychologist who evaluated H affirmed the importance for H to continue a relationship with her siblings and for H to be able to attach to permanent caregivers, given her personal history and needs.

Additionally, the record indicates that the juvenile court carefully considered the argument and case citations provided by mother's trial counsel. The juvenile court declined to select a new permanency plan at the close of the hearing, specifically citing that it wished to review the cases provided by mother's counsel and spend time reviewing exhibits. Subsequently, the court issued several pages of findings of fact and conclusions of law, which include observations about the nature of the bond between H and mother at the time of the hearing. There is legally sufficient evidence in the record to support the juvenile court's determination that no compelling reason prevented changing the permanency plan to adoption and that adoption is in the best interest of H. We cannot say there is a "serious question[,]" *T. L.*, 358 Or at 702, regarding the juvenile court's determinations.

Affirmed.